IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 06 C 2075 |
| CEISEL MASONRY, INC., | and |
| Defendant. | Case No. 06 C 2084 |
| DOMINGO RAMIREZ, CUAUHTEMOC GUERRERO, and JUAN CALDERON, | Hon. Harry D. Leinenweber |
| Plaintiffs, | |
| v. | |
| CEISEL MASONRY, INC., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Before the Court are two racial harassment suits.  One brought by individual Plaintiffs, and the second brought by the Equal Employment Opportunity Commission (the "EEOC") on behalf of a class of Hispanic employees.  The cases have been consolidated based on relatedness, and the parties have filed Cross-Motions for Partial Summary Judgment.  Defendant Ceisel Masonry moves for judgment on the EEOC's claims for monetary damages on behalf of class members Jose Alvarado, Adrian Posada, German Ortiz, and Alejandro Buenrostro.  (The EEOC has stipulated that it will not seek relief on behalf of Rudy Geronimo or Eduardo Mejia.)  Plaintiff, in turn,

moves to bar Defendant from raising the affirmative defense identified in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). For the reasons stated below, the motions for partial summary judgment are **denied**.

## I. **FACTS**

Ceisel Masonry is a masonry subcontractor with its principal place of business in Northbrook, Illinois. Adalbert "Al" Ceisel ("Ceisel") is the president and sole owner of Ceisel Masonry. Erwin Bernhardt ("Bernhardt") is Ceisel's Secretary-Treasurer, Project Manager, and Estimator. Don Etters ("Etters") worked as Ceisel's Superintendent until he passed away in December 2006 and was replaced by Tom Leakokos ("Leakokos"). The Superintendent supervises the foremen and has authority to hire, fire, lay off, and transfer Ceisel workers. Jeff Hankins ("Hankins") and Steve Szabo ("Szabo") both work as foremen, and Szabo occasionally has filled in as Superintendent when Leakokos was on vacation.

Ceisel foremen are present at the individual job sites to supervise the work of the bricklayers and laborers, make sure the scaffolding is built correctly, and ensure compliance with safety policies. Foremen have authority to issue verbal and written discipline and safety citations, which ultimately could lead to termination of the employee. Foremen may also recommend that a Ceisel worker be hired, fired, or laid off. Plaintiff argues that Ceisel has always followed the recommendations of its foremen to

discharge particular workers, but Ceisel denies this fact and denies that foremen have any independent authority to hire, fire, lay off, or transfer workers.

According to the complaint, Al Ceisel, Don Etters, Ceisel foremen, and other employees made numerous derogatory comments about, and directed toward, Hispanic workers. These comments included addressing or discussing Hispanic workers as "wetbacks," "fucking Mexicans," and "chicos." Plaintiffs also complain about racist graffiti found on the port-a-potties at Ceisel job sites, which included swastikas and the phrases "go back to your own country," "spics," "cockroaches," "this is where Mexicans belong" (pointing to the toilet), "wetbacks," and "for a green card, take one" (pointing to toilet paper). Defendant admits that Bernhardt, Szabo, Hankins, and Al Ceisel all have seen racist graffiti in the port-a-potties at Ceisel job sites, and that Ceisel has taken no action to have the graffiti removed. Szabo also has admitted to using the terms "wetback," "fucking Mexican," and "chico," and he says he heard other foremen call Hispanic employees by the same names. Ceisel denies any derogatory remarks made by Don Etters or Al Ceisel. The company further avers that the comments by foreman Szabo were made in a joking manner, as part of a back and forth daily banter between employees. Plaintiffs Domingo Ramirez, Cuauhtemoc Guerrero, and Francisco Algarin filed charges with the EEOC in January, February, and April of 2004, respectively.

Prior to March 2004, Ceisel claims it had a policy against harassment, but it was not written. Ceisel further admits that it had not given its foremen any training or instruction that racial harassment was against company policy, and that it had not informed its workers that they would not be retaliated against if they complained of harassment. An EEOC poster was put up only at the Soldier Field job site. Although the collective bargaining agreements with both the laborers and bricklayers unions contained anti-discrimination provisions, those agreements do not define harassment or specifically mention it. Nor do they state that complaining employees are protected from retaliation.

In response to the filing of EEOC charges, Ceisel Masonry enacted its first written anti-harassment policy in March 2004. Ceisel handed the policy out to its current and new employees and read and explained the policy to its foremen. Ceisel alleges that it discusses and reaffirms its anti-harassment policy at every meeting with the foremen. Ceisel also discussed the claims of harassment with Superintendent Etters, but never interviewed the alleged victims. Even though Szabo admitted in the presence of Ceisel's counsel that he "maybe" or "probably" used the terms "chico," "wetback," and "fucking Mexican," Ceisel Masonry never instructed Szabo that it was inappropriate to say these things. Nor has Ceisel taken any action to discipline or fire Szabo or Etters in response to the EEOC complaints.

## II.  ANALYSIS

Summary judgment is inappropriate where the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court therefore views the evidence in the light most favorable to the non-moving party and resolves all factual disputes in that party's favor. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir., 2005).  However, the opposing party must go beyond the allegations and denials of its pleadings and identify specific evidence which demonstrates a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e)(2); *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir., 1996).  A factual dispute is only material when it is outcome determinative; if the undisputed facts demonstrate that one party is entitled to relief, summary judgment is still appropriate. *See Collins v. American Optometric Ass'n*, 693 F.2d 636, 639 (7th Cir., 1982).

### A.  Failure to File Timely EEOC Charges

Ordinarily, an individual seeking to file suit under Title VII must make a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e); *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 622-23 (7th Cir., 2002).  Defendant argues that the class members' failure to file timely EEOC charges should bar the EEOC from recovering monetary damages on their behalf.  Indeed, there is

support for the position that the EEOC's special enforcement authority does not give it the power to expand individual substantive rights. *See E.E.O.C. v. Custom Companies, Inc.*, 2004 WL 765891, at *10 (N.D.Ill., Apr. 7, 2004); *E.E.O.C. v. Harvey L. Walner & Associates*, 1995 WL 470233, at *4 (N.D.Ill., Aug. 7, 1995).

These holdings have been brought into question, however, and Defendant's argument has been foreclosed by the Seventh Circuit's decision in *E.E.O.C. v. Sidley Austin LLP*, 437 F.3d 695 (7th Cir., 2006). Relying on *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002), the Seventh Circuit made clear that the EEOC's enforcement authority is not derivative of, or dependent upon, the legal rights of individuals, even when the EEOC primarily seeks compensatory relief on those individuals' behalf. *See Sidley*, 437 F.3d at 696. Accordingly, the Court squarely held that an individual's failure to file a timely charge of discrimination did not prevent the EEOC from seeking monetary relief on his behalf. *See id.* at 696. Although Defendant attempts to distinguish *Sidley* as a case under the ADA, as opposed to Title VII, the EEOC's enforcement power is essentially the same under both statutes, *see Waffle House*, 534 U.S. at 285, and the Seventh Circuit's broad reasoning is equally applicable to this case. The failure of individual class members to file timely charges of harassment does not prevent the EEOC from seeking monetary damages on their behalf.

## B.  Whether the Harassment Is Sufficiently Severe or Pervasive

Not all offensive workplace behavior violates the law.  *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).  However, when the offensive conduct is based on a protected characteristic, and it is severe or pervasive enough to alter the terms and conditions of someone's employment, such harassment violates Title VII's prohibition against discrimination.  *See* 42 U.S.C. § 2000e-2(a)(1); *Smith v. Sheahan*, 189 F.3d 529, 532-33 (7th Cir., 1999).  Where the EEOC seeks to recover monetary damages on behalf of individual employees, it must prove that the specific conduct to which each individual was exposed is itself sufficiently severe or pervasive to constitute actionable harassment.  *See E.E.O.C. v. International Profit Associates, Inc.*, 2007 WL 3120069, at *12-14 (N.D.Ill., Oct. 23, 2007).  Defendant contends that the evidence is insufficient to state individualized claims of harassment on behalf of class members Alvarado, Posada, Ortiz, and Buenrostro.

In determining whether a work environment is objectively hostile, the Court looks at all the circumstances, including:  the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).  The harassment also should be assessed in light of the workplace culture and general social

mores. *See Smith*, 189 F.3d at 534-35. Simple teasing, offhand comments, and the sporadic use of abusive language are insufficient. *See Faragher*, 524 U.S. at 788. "The workplace that is actionable is the one that is hellish." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir., 1997).

Jose Alvarado heard foreman Jeff Hankins say "wetback" and "fucking Mexican" every day as Alvarado walked by. During the last month of Adrian Posada's employment, Hankins continually insulted Posada, calling Posada a "wetback" and "fucking Mexican" every time they bumped into each other. Unambiguously racial epithets such as these fall "on the more severe end of the spectrum." *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 950 (7th Cir., 2005). Indeed, discussing a case involving the term "wetback," the Seventh Circuit said it is "difficult to imagine epithets more offensive to someone of Hispanic descent." *Id.* at 950-51. The Court acknowledges that the comments heard by Alvarado may not have been directed toward him, and such "second-hand harassment" is not as severe. *See Smith v. Northeastern Illinois University*, 388 F.3d 559, 567 (7th Cir., 2004). Nor do isolated utterances of racial epithets create a hostile working environment. *See Salvadori v. Franklin School Dist.*, 293 F.3d 989, 997 (7th Cir., 2002). But a *series* of such statements certainly could result in a work environment that is hostile or offensive. *See Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1456 (7th Cir., 1994). *See also*

*Cerros*, 398 F.3d at 951 ("a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute"). Plaintiff therefore succeeds in raising a genuine issue of material fact that the harassment suffered by Alvarado and Posada was sufficiently pervasive, if not also severe.

Class members Ortiz and Buenrostro do not claim the same kind of every day, continuous subjection to racial epithets. German Ortiz identifies approximately five instances in which a particular bricklayer called him "Mexican" and "landscaper," and told Ortiz that "all Mexicans are good for is cutting grass." Ortiz also overheard bricklayers say "wetback" and "chicos," but does not provide evidence about the frequency of these comments. Alejandro Buenrostro identifies only two occasions on which he overheard foreman Hankins refer to others as "fucking Mexicans" and two more times that he heard Hankins say "Nobody speaks Spanish here, its America." While perhaps insensitive, the four comments heard by Buenrostro over the course of his year and a half of employment cannot be described as severe or pervasive. *Cf. Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 398 (7th Cir., 1999). There is also at least some doubt as to whether the comments heard by Ortiz were sufficiently severe or pervasive.

Plaintiff bolsters the claims of both Ortiz and Buenrostro with additional evidence about racist graffiti in the port-a-

potties at Ceisel work sites.  The graffiti included swastikas and the phrases "fucking Mexicans," "cockroaches," "wetbacks," "spics," and "go back to your own country."  According to Plaintiff, Buenrostro and Ortiz saw such graffiti every time they used the restroom.  Continuous subjection to such graffiti clearly could suffice to demonstrate a hostile work environment. *See Cerros*, 398 F.3d at 951 ("If . . . [plaintiff] was subjected to graffiti calling him a 'spic' and 'wetback', directing him to 'go back to Mexico,' and proclaiming 'KKK' and "white power,' the fact that each individual epithet may have appeared in isolation does not undo their cumulative effect").  The Court is not oblivious to the fact that crude graffiti regularly appears in public restrooms and port-a-potties. *Cf. Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1274 (7th Cir., 1991) (court should consider the lexicon of obscenity that pervaded the workplace and the reasonable expectation of plaintiff in entering that environment).  The Court further recognizes that such harassment is not as personal or direct as comments made to a specific employee. *Cf. Smith*, 388 F.3d at 567.  But the offensive, invasive, and continuous nature of this graffiti cannot be ignored.  The comments appearing in the port-a-potties represent a litany of the most offensive and clearly racial epithets possible.  When an action as private as using the restroom is pervaded by such unwanted, discriminatory markings, the environment in which the employee works rightfully can be described

as hostile and offensive.  The Court cannot find as a matter of law that such conduct is insufficiently severe or pervasive to state an actionable claim of harassment.

### C.  Whether There Is a Basis for Employer Liability

An actionable claim of harassment also requires the Plaintiff to demonstrate that there is a basis for employer liability.  *See Mason v. Southern Illinois University at Carbondale*, 233 F.3d 1036, 1043 (7th Cir., 2000).  Where a plaintiff is harassed by his supervisor, the employer will be strictly liable for the conduct of the supervisor, subject to an affirmative defense.  *See Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 505 (7th Cir., 2004).  However, where the harassment is perpetrated by a co-worker, the employer will be liable only if it was negligent either in discovering or remedying the harassment.  *See id.* at 506.

### 1. There Is Insufficient Evidence of Supervisor Misconduct

Defendant's liability for the harassing comments made by foreman Jeff Hankins therefore depends upon whether Hankins should be considered a supervisor or co-worker for purposes of Title VII.  "Because liability is predicated on misuse of supervisory authority, the touchstone for determining supervisory status is the extent of authority possessed by the purported supervisor."  *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1033 (7th Cir., 1998).  A supervisor is someone entrusted with the power to *directly* affect the terms and conditions of a victim's

employment.  *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir., 2002).  This authority "primarily consists of the power to hire, fire, demote, promote, transfer or discipline an employee." *Id.*  Mere authority to oversee aspects of another employee's job performance is insufficient.  *See Rhodes*, 359 F.3d at 506.

The bulk of foreman Hankins' job duties consisted of supervising the work of bricklayers and laborers and ensuring the safety of the jobsite.  Hankins did not have the authority to hire, fire, demote, promote or transfer employees.  Nor does Hankins' ability merely to *recommend* discharge transform him into a supervisor, even if his recommendations usually were followed.  *See Parkins*, 163 F.3d at 1035; *Bray v. City of Chicago*, 2002 WL 31427026, at *6 (N.D.Ill., Oct. 30, 2002).  The power to issue disciplinary citations also is insufficient to make Hankins a supervisor for purposes of Title VII liability.  Although courts often have identified the "power to . . . discipline an employee" as a mark of supervisory status, such power must be understood in the broader context of "authority to *directly* affect the terms and conditions of a victim's employment."  *Hall*, 276 F.3d at 355.  It is important, therefore, to distinguish between individuals who are entrusted with the power to impose tangible disciplinary sanctions against an employee, such as a demotion or suspension without pay, and those individuals who have only the authority to issue citations unaccompanied by any concrete or direct change in the

terms or conditions of employment.  Where the ultimate consequences of disciplinary citations are entrusted to a higher level manager, the authority to issue such citations cannot suffice to establish supervisory status.  Accordingly, foreman Hankins cannot be considered a supervisor for purposes of Title VII liability, and the harassment of Alvarado and Posada must be reviewed under the negligence standard for co-worker harassment.

Because Plaintiff presents no evidence that the racist graffiti about which Ortiz and Buenrostro complain was written by Ceisel supervisors, it too will be reviewed under the standard of negligence.  Indeed, the possibility that the graffiti was written by non-Ceisel employees or first written at non-Ceisel jobsites stands unrebutted.  While Plaintiff's inability to determine the authorship of the graffiti "poses no obstacle to establishing that this graffiti produced or contributed to a hostile work environment," *Cerros*, 398 F.3d at 951, authorship remains important to determining the relevant standard of liability.  Absent proof that a supervisor was responsible for the graffiti, the Court cannot find Defendant strictly liable for such harassment, and must instead analyze the employer's liability under the more lenient standard of negligence.

### 2. A Reasonable Jury Could Find that Ceisel Was Negligent

What an employer knew or should have known is critical to the analysis of its negligence in discovering or remedying harassment.

The reasonableness of an employer's remedial action is measured against the harassment of which it has been apprised. *See Fuller v. Caterpillar, Inc.*, 124 F.Supp.2d 610, 615 (N.D.Ill., 2000). Indeed, without any notice of the harassment, an employer cannot be held liable for its failure to correct or prevent it. *See Jarvis v. Sigmatron Intern. Inc.*, 223 F.Supp.2d 981, 986 (N.D.Ill., 2002). "Generally, the law does not consider an employer to be apprised of the harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir., 2004). However, where the employer has notice of the harassment by other means, an employee's failure to report will not relieve the employer of its duty to correct and remedy such harassment. *See, e.g., Wilson v. Chrysler Corp.*, 172 F.3d 500, 509 (7th Cir., 1999).

Defendant had clear and direct notice of the racist graffiti about which class members Ortiz and Buenrostro complain. President Al Ceisel saw such graffiti himself, as did Secretary-Treasurer Bernhardt. Ceisel foremen use the same port-a-potties, and there is evidence that the graffiti was common and pervasive. Yet, Ceisel did not take any action to have the graffiti removed or to find out who was responsible for writing it. Instead, Ceisel contends that it cannot be held liable for the graffiti, because it was the duty of the general contractor, not Ceisel, to provide and clean the port-a-potties at job sites.

In *Williamson v. Denk & Roche Builders, Inc.*, the Court addressed the precise question of a subcontractor's liability for racist graffiti in port-a-potties maintained by a general contractor, and it held to the contrary. *See Williamson,* 2006 WL 1987808, at *2 n.3 (N.D.Ill., July 11, 2006). If an employer is negligent in discovering or remedying workplace harassment, it is irrelevant that the conduct may have been committed by a non-employee. *See Dunn v. Washington County Hosp.*, 429 F.3d 689, 691 (7th Cir., 2005). Certainly, Defendant's ability to control the behavior of non-employees will be relevant in determining the reasonableness of its response. *See* 29 C.F.R. § 1606.8(e). However, Plaintiff points to future occasions on which Ceisel has been successful in asking the general contractor to remove graffiti, and a reasonable jury could find that Defendant's failure to take *any* action was an unreasonable response to its clear knowledge of this problem. Accordingly, there is a genuine dispute of material fact about whether Defendant is liable for the harassment suffered by class members Ortiz and Buenrostro, and Defendant's motion for summary judgment on these claims must be denied.

It is less clear whether Defendant could be found negligent in discovering or remedying the oral harassment about which Alvarado and Posada complain. Plaintiff admits that Alvarado and Posada never reported the alleged harassment. Instead, Plaintiff claims

that Defendant had notice of the harassment through the filing of Ramirez's EEOC charge and Defendant's knowledge of pervasive harassment at construction sites. While Al Ceisel admitted that the construction industry, *in general*, was known for crude comments, he also stated that he had never heard any derogatory comments by any of *his* employees, and that no one had ever complained to him about racial harassment. Nor did the evidence regarding Szabo's misconduct necessarily put Defendant on notice about Alvarado and Posada's harassment by Hankins. *See Fuller*, 124 F.Supp.2d at 617 (complaints about the conduct of a different harasser at a different time do not provide notice of the harassment suffered by plaintiff).

Yet, even without clear notice of harassment committed specifically by Hankins, the overall evidence certainly establishes constructive notice of widespread use of racial epithets. Other evidence demonstrates that such racially-based comments were an "ongoing" and "everyday" occurrence, and the EEOC charge by Domingo Ramirez alleges continuing use of racial slurs by "foremen" generally. Under such circumstances, a reasonable jury could conclude that Defendant should have known about, or should have done more to discover, the harassment suffered by Alvarado and Posada. Summary judgment as to these claims must be denied.

### D. **Ability to Raise the *Faragher/Ellerth* Defense**

Plaintiff EEOC's motion for partial summary judgment on Ceisel's affirmative defense under *Ellerth* presents unique concerns regarding the rules of summary judgment and the Court's power to decide such a motion. Because the motion seeks to eliminate only certain defensive matter from the case, it never could lead to dispositive judgment on all, or even part of a claim. As such, it is not contemplated by Rule 56(a) or (b), and section (d) was never intended to permit motions for partial summary judgment in their own right. *See Krauss v. Keibler-Thompson Corp.*, 72 F.R.D. 615, 616 (D.Del., 1976); *Barry v. Liddle, O'Connor, Finkelstein & Robinson*, 1997 WL 736725, at *3-4 (S.D.N.Y., Nov. 25, 1997). Yet, despite such textual uncertainty, Courts in the Northern District of Illinois routinely permit motions for partial summary judgment on affirmative defenses. *See Rubin v. Islamic Republic of Iran*, 408 F.Supp.2d 549, 552 (N.D.Ill., 2005). Commentators also encourage the allowance of such motions as a means by which to expedite and simplify a case for trial. *See* 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2737 (3d Ed. 1998). However, the particular nature of an affirmative defense under *Ellerth* convinces the Court that a motion for partial summary judgment as to this defense cannot be permitted.

An affirmative defense, of course, ordinarily does not come into operation unless the plaintiff first proves defendant's

underlying fault or liability.  Here, as with all motions seeking only partial summary judgment on an affirmative defense, Plaintiff makes no claim that Defendant's liability has been proven by the undisputed evidence.  Instead, most courts which permit such motions assume an underlying fault for purposes of the motion, before then construing evidence of the defense in the light most favorable to the defendant.  *See, e.g., Holden v. Balko*, 949 F.Supp. 704, 706 (S.D.Ind., 1996).  Such an assumption is troubling.  Not only is it at odds with the plaintiff's substantive burden of proof, but also with the presumption and directive to construe all facts in favor of the non-moving party when deciding a motion for summary judgment.  (The Court leaves for another day the jurisdictional complications involved in offering opinions about an affirmative defense which may never prove necessary or relevant).

Perhaps the hypothetical assumption of liability proves to be a harmless (even, efficient) fiction in those cases where the affirmative defense is based on an independent matter, such as a defense of *res judicata*, immunity, or the statute of limitations. The affirmative defense under *Ellerth*, however, is deeply tied to the underlying facts establishing liability.  Such a defense requires preventive and corrective action which is reasonable in relation to the particular workplace and the harassment which has occurred.  *See Ellerth*, 524 U.S. at 765 (Discussing the "need for

a stated policy suitable to the employment circumstances"). *See also Cerros*, 398 F.3d at 953 ("An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment *under the particular facts and circumstances of the case* at the time the allegations are made") (emphasis added); *Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 432 (7th Cir., 1995) ("What is reasonable depends on the gravity of the harassment"). Assumptions about the facts of liability therefore pose a particular danger in the context of an affirmative defense under *Ellerth*. Permitting a motion for partial summary judgment in such a situation would be unworkable and inappropriate.

Any assumption the Court was to make about the underlying facts establishing liability would necessarily affect the determination of whether Defendant's response was reasonable. Disputes about any of the facts underlying the *prima facie* case of harassment will change the type, scope, and force of response necessary to satisfy the affirmative defense. For example, disputes about which employees qualify as supervisors will significantly expand or contract the harassment for which an employer is strictly liable and for which it must demonstrate affirmative efforts to prevent or correct. The level of necessary employer action also will vary with the severity or pervasiveness of the harassing behavior. Simply put, outrageous and ongoing harassment by a broad number of supervisors will require a much

different and much more forceful response than more benign and isolated instances of harassment by only one supervisor. Until the underlying facts of harassment are established, it would be both difficult and unfair to assess the reasonableness of an employer's response. This is especially true in a case where the EEOC sues on behalf of a class of employees, and the Court must examine the claims of multiple individuals, each of whom has experienced different instances of harassment at the hands of different co-workers or supervisors.

It would be a different situation, of course, were Plaintiff able to identify undisputed facts establishing harassment. The Court then could assess the reasonableness of an employer's response, and Plaintiff would be free to move for summary judgment on the entirety of its harassment claim. (It is this development of the underlying facts of harassment at trial that distinguishes Plaintiff's citation to *Faragher* and to *Molar v. Booth*, 229 F.3d 593 (7th Cir., 2000)). However, absent established facts of the underlying harassment, it would be both unfair and inappropriate for the Court to pass judgment on an employer's affirmative defense under *Ellerth*. Because of the standard of comparative reasonableness at issue, Plaintiff's motion for partial summary judgment poses problems not present in the motions previously permitted in this District, and it cannot be allowed.

Plaintiff cites no case from the Northern District of Illinois in which a court has extended the use of partial summary judgment to an affirmative defense under *Ellerth*. Nor are the cases cited from other jurisdictions persuasive. None of those cases contain any discussion about the propriety of a motion for partial summary judgment on an affirmative defense. Nor do they grapple with the dangers and difficulties identified in this opinion. Indeed, the majority of the cases cited struck the *Ellerth* defense because of its simple inapplicability, not because of any judgment about the reasonableness or sufficiency of an employer's actions to prevent or correct harassment. *See E.E.O.C. v. Geoscience Engineering & Testing, Inc.*, 2007 WL 951632, at *2 (S.D.Tex., Mar. 28, 2007) (defense unavailable where harassment committed by employer's alter ego or proxy); *Lissick v. Merrill Corp.*, 2003 WL 22213114, at *6 (D.Minn., Sept. 23, 2003) (defense inapplicable to claims of co-worker harassment); *Begley v. Davis County Hospital*, 2002 WL 824777, at *7 (S.D.Iowa, Apr. 4, 2002) (defense unavailable where employee claims supervisor's harassment resulted in a tangible employment action).

Plaintiff identifies only one case which actually passed substantive judgment on the reasonableness of an employer's response. *See E.E.O.C. v. Video Only, Inc.*, 2008 WL 2433841 (D.Or., June 11, 2008). To the extent the decision in *Video Only* was motivated by the *delay* in corrective action, and not

necessarily its *sufficiency*, it is distinguishable from the judgment the EEOC asks the Court to make in this case. To the extent the court in *Video Only* also passed judgment on the substantive reasonableness of the employer's response, it did so based on generalized notions of what ordinarily is required, not by comparing the actual facts of harassment to the response reasonably necessary to prevent and correct it. Controlling case law prohibits this Court from engaging in such generalized judgments, and mandates that the Court instead engage in an individualized assessment of an employer's response in light of the particular facts of harassment. *See, e.g., Cerros*, 398 F.3d at 953. Such an assessment cannot be made where Plaintiff moves for partial summary judgment only on the affirmative defense.

### III. <u>CONCLUSION</u>

For the reasons stated above, the Court cannot entertain Plaintiff's Motion for Partial Summary Judgment on the Affirmative Defense under *Ellerth*. Disputed facts about the harassment suffered by Plaintiff class members and Defendant's liability therefor also prevent the Court from granting Defendant's Motion for Partial Summary Judgment. Both Motions are **denied**.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

**DATE:** 1/23/2009